******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ABIN BRITTON *v.* COMMISSIONER OF CORRECTION
(AC 39407)

Lavine, Keller and Pellegrino, Js.

*Syllabus*

The petitioner, who had been convicted of the crimes of manslaughter in
the first degree, kidnapping in the first degree and robbery in the first
degree, filed a second petition for a writ of habeas corpus. The petitioner
claimed, inter alia, that his trial counsel and his first habeas counsel,
D, had rendered ineffective assistance, and that he was denied due
process because the trial court did not instruct the jury, in accordance
with *State* v. *Salamon* (287 Conn. 509), that he could not be found
guilty of the two kidnapping charges against him if his confinement or
movement of the victim was merely incidental to the commission of
the other crimes charged. The petitioner and two other men, P and S,
had beaten the victim to death after the victim sought to purchase crack
cocaine from the petitioner. After a struggle in the victim's car, the
petitioner, P and S pulled the victim from the car and beat him until he
lay motionless on the ground, and then the petitioner put the victim in
the backseat of the car. The petitioner, P and S then drove the victim
to a park, removed him from the car and beat him again before they
dragged his body into the park and covered it with dirt and plastic bags.
The petitioner, P and S also took an imitation watch and cash from the
victim during the incident. C, who was a former coworker of the peti-
tioner, gave a statement to the police in which he told them, inter alia,
that the petitioner had told him that the victim was still alive when the
petitioner put the victim in the car. The trial court did not instruct the
jury in accordance with *Salamon*, which had not been decided at the
time of the petitioner's criminal trial and direct appeal. The first habeas
court denied the petitioner's first habeas petition, in which he alleged
that his trial counsel had rendered ineffective assistance. The second
habeas court denied the second habeas petition, concluding, inter alia,
that the petitioner's claim of ineffective assistance of trial counsel was
successive and, thus, barred by the doctrine of res judicata. The habeas
court further concluded that a jury instruction pursuant to *Salamon*
was not warranted and that even if the petitioner had been entitled to
a *Salamon* instruction, the absence of such an instruction was harmless
error. The habeas court thereafter denied the petition for certification
to appeal, and the petitioner appealed to this court. *Held*:

1. The habeas court abused its discretion in denying the petition for certifica-
   tion to appeal from the judgment denying the habeas petition; given
   the underlying facts, the criminal charges, and the relative newness of
   *Salamon* and its retroactive application, the petitioner's *Salamon* claim
   was adequate to deserve encouragement to proceed further, as the issues
   it raised had not been entirely settled by our Supreme Court.

2. The habeas court properly determined that the petitioner was not denied
   his statutory and constitutional rights to due process and to the effective
   assistance of his first habeas counsel:

   a. The petitioner could not prevail on his claim that he was denied his
   constitutional right to due process when he was convicted of kidnapping
   without the jury having been given a *Salamon* instruction, as the second
   habeas court properly determined that the trial court's failure to give
   a *Salamon* instruction was harmless beyond a reasonable doubt: the
   evidence demonstrated that the petitioner engaged in several offenses
   during which he restrained and moved the victim in a manner that was
   not merely incidental to or necessary for the commission of assault or
   robbery, as no reasonable juror could have concluded that the restraint
   or movement imposed on the victim after he was beaten and lying
   motionless on the ground of the parking lot was necessary for the
   commission of the robbery, and driving the victim to the park was not
   necessary to inflict physical injury on him; moreover, the offenses were
   separated by distinct periods of time and by more movement or restraint
   of movement, and the omitted element was uncontested and supported
   by overwhelming evidence such that the jury's verdict would have been

the same absent the trial court's error.

b. The habeas court properly determined that the petitioner's claim of ineffective assistance of trial counsel in his second habeas petition was successive and, therefore, barred by the doctrine of res judicata; because the claim alleged no new facts that were not known at the time of the first habeas trial, it was not an abuse of discretion for the habeas court to deny the petition for certification to appeal with respect to that claim, which did not concern an issue that was debatable among jurists of reason that a court could resolve in a different manner, nor did it deserve encouragement to proceed further.

c. The habeas court properly determined that the petitioner's statutory and constitutional rights to the effective assistance of his first habeas counsel, D, were not violated: the petitioner failed to demonstrate that D was ineffective with respect to his investigation of trial counsel's assistance regarding the suppression of the petitioner's statement to the police, or that D was ineffective by failing to investigate and subpoena witnesses to demonstrate that the first responders to the crime scene mishandled the victim's body, and the petitioner's claim that D was ineffective by failing to introduce exculpatory evidence to show the contradiction between C's statement to the police and C's trial testimony was unavailing, as the petitioner presented no evidence that the habeas court considered exculpatory, the jury was apprised of the contradiction between C's statement to the police and his trial testimony, and our Supreme Court previously rejected a similar claim made by P in his direct appeal from his conviction in which he challenged the admission of C's statement to the police; moreover, D was not ineffective for failing to raise a *Salamon* claim in the first habeas petition, as the movements and restraints of the victim had independent criminal significance and, thus, the underlying facts would not have warranted a *Salamon* instruction.

Argued March 8—officially released October 16, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Fuger, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Affirmed.*

*Michael W. Brown*, assigned counsel, for the appellant (petitioner).

*Michael L. Regan*, state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Abin Britton, appeals following the second habeas court's denial of his petition for certification to appeal from that court's denial of his second petition for a writ of habeas corpus. On appeal, the petitioner claims that the second habeas court, *Fuger, J.*, (1) abused its discretion by denying his petition for certification to appeal, and (2) improperly concluded that he was not denied the constitutional right to due process because the jury was not instructed pursuant to *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), to the effective assistance of trial counsel and to the effective assistance of first habeas counsel. Although we agree that the second habeas court abused its discretion by denying the petitioner certification to appeal, we disagree that the court improperly denied his second petition for a writ of habeas corpus and, therefore, affirm the judgment of the second habeas court.

The present appeal has its factual roots in the brutal murder of the victim, James Connor, in the early morning hours of August 23, 1998.[1] See *State* v. *Britton*, 283 Conn. 598, 600, 929 A.2d 312 (2007). Pursuant to our plenary review of the petitioner's claims, we have reviewed the entire record, which includes the transcript of the petitioner's criminal trial that was held in November and December, 2004. On the basis of the evidence in the record, we conclude that the jury reasonably could have found that on the night of August 22, 1998, the victim visited his parents on their boat in the Essex Marina and left at approximately 11:30 p.m. to go the Black Seal, an Essex restaurant and bar. Sometime after midnight, he drove his father's Saab to Lucky's Café (Lucky's) in New London in search of cocaine. The petitioner, Gregory Pierre, Jeffrey Smith (perpetrators) and their friend, Junito Jarvis, were present at Lucky's when the victim arrived. The victim approached the petitioner and asked him if he had any crack cocaine. The petitioner did not have any crack "on [him]," but he knew where to get some. The victim drove himself and Pierre to a New London apartment complex where Pierre lived and parked in the parking lot. Jarvis drove the petitioner and Smith to a spot on Michael Road that was adjacent to the parking lot. Jarvis was able to see the Saab and observe the perpetrators from where he was parked.

The victim remained in the Saab, but Pierre went to his apartment. When he returned, Pierre walked to the driver's side of the Saab, where the petitioner and Smith joined him some minutes later. Thereafter, all three of the perpetrators got into the Saab where a struggle ensued. The perpetrators got out of the Saab, and pulled the struggling victim out of the vehicle and beat him until he lay motionless on the ground. Jarvis remained in his car, witnessed the beating and saw the petitioner

pick up the victim and put him on the backseat of the Saab. The petitioner told Norman L. Carr that the victim was still alive when he put him in the Saab. The perpetrators got back into the Saab and drove to a parking lot in Bates Woods, a New London park.[2] At Bates Woods, the perpetrators removed the victim from the Saab and beat him again. The petitioner took a pipe from the Saab, rammed it into the victim's mouth and twisted it.[3] The perpetrators dragged the victim's body into Bates Woods and covered it with dirt and plastic bags. During the incident, the perpetrators took an imitation Rolex watch and $90 from the victim.

At approximately 6:30 a.m. on August 23, 1998, the Waterford police discovered the Saab partially submerged in a duck pond behind the police station. They used the license plate number to identify the Saab's owner, the victim's father, Donald Connor. Members of the New London Police Department impounded the Saab, and, along with the state police, conducted an investigation. During their investigation, the police discovered two palm prints on the door posts of the Saab. The windshield of the Saab was cracked and the rearview mirror was missing. In addition, investigators found red and brown stains inside the Saab, including on the rear seat, the door panels, and the visor over the driver's seat, which led the police to believe that someone had been injured.

In January, 1999, a badly decomposed human body was found in Bates Woods. Harold Wayne Carver II, the state's chief medical examiner, identified the remains as those of the victim and classified the manner of his death as a homicide.[4] The police identified the petitioner, Pierre and Smith as suspects. At the request of the police, the petitioner accompanied the New London police to the station, provided them with his palm prints and gave them a statement regarding his involvement in the victim's death. He subsequently was arrested, as were Smith and Pierre, and charged in connection with the victim's murder.

On July 10, 2001, the state filed a substitute information, charging the petitioner with six crimes: capital felony in violation of General Statutes § 53a-54b (5), murder in violation of General Statutes § 53a-54a (a), felony murder in violation of General Statutes § 53a-54c, kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B), and robbery in the first degree in violation of General Statutes § 53a-134 (a) (1).[5] Following the presentation of evidence,[6] a jury of twelve found the petitioner guilty of one count of felony murder, one count of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1), two counts of kidnapping in the first degree, and one count of robbery in the first degree. See *Britton* v. *Commissioner of Correction*,

141 Conn. App. 641, 645, 61 A.3d 1188, cert. denied, 308 Conn. 946, 67 A.3d 290 (2013).

The trial court, *Schimelman, J.*, merged the petitioner's manslaughter conviction with the felony murder conviction and rendered judgment in accordance with the jury's verdict. Id. The court sentenced the petitioner to sixty years in prison on the manslaughter conviction, twenty-five years on each of the kidnapping counts and twenty years on the robbery conviction. The kidnapping and robbery sentences were to be served concurrently and consecutive to the manslaughter conviction, resulting in an effective term of eighty-five years in prison. The petitioner's conviction was affirmed on direct appeal to our Supreme Court.[7] *State* v. *Britton*, supra, 283 Conn. 598.

After our Supreme Court affirmed the petitioner's conviction, the self-represented petitioner filed a petition for a writ of habeas corpus in November, 2007 (first habeas petition). Appointed habeas counsel amended the first habeas petition, alleging that the petitioner was denied the effective assistance of trial counsel.[8] See *Britton* v. *Commissioner of Correction*, supra, 141 Conn. App. 646. The first habeas court, *Schuman, J.*, denied the first habeas petition and the petition for certification to appeal. Id. The petitioner appealed to this court. This court dismissed the appeal; id., 669; and our Supreme Court denied certification to appeal. See *Britton* v. *Commissioner of Correction*, 308 Conn. 946, 67 A.3d 290 (2013).

The self-represented petitioner filed the present petition for a writ of habeas corpus in October, 2011. On March 24, 2016, appointed counsel filed the second revised amended petition (second habeas petition) alleging that the petitioner's constitutional rights were violated because he was denied (1) the effective assistance of trial counsel,[9] (2) the effective assistance of first habeas counsel[10] and (3) a fair trial because the trial court's jury instruction with respect to the kidnapping charges did not comply with *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 12 A.3d 817 (2011), *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008),[11] and *State* v. *Salamon*, supra, 287 Conn. 509. With respect to his claim pursuant to *Salamon*, the petitioner alleged that if the jury had been charged pursuant to *Salamon*, it would not have found him guilty of either of the counts of kidnapping in the first degree.

The second habeas court denied the second habeas petition in a memorandum of decision issued on June 23, 2016. The court found that (1) the petitioner's claim of ineffective assistance of trial counsel was successive and, therefore, was barred by the doctrine of res judicata; (2) that the petitioner had failed to demonstrate that his first habeas counsel rendered ineffective assistance by failing to prove that trial counsel's performance was ineffective; and (3) a reasonable fact finder

clearly could have determined that the petitioner's restraint or movement of the victim was not merely incidental to the other offenses[12] and, therefore, a *Salamon* instruction was not warranted. The second habeas court denied the petitioner certification to appeal.

The petitioner appealed to this court, claiming that the second habeas court abused its discretion by denying certification to appeal. He also claimed that his constitutional right to due process was violated because he was convicted of kidnapping without the jury having been instructed "to determine whether the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crimes." See *State* v. *Salamon*, supra, 287 Conn. 542. In addition, the petitioner claims that his constitutional right to the effective assistance of trial counsel was violated, and that his statutory and constitutional rights to the effective assistance of habeas counsel were violated. We agree that the second habeas court abused its discretion by denying the petition for certification to appeal, but we disagree that the court erred by denying the second petition for a writ of habeas corpus.

I

We first consider the petitioner's claim that the second habeas court abused its discretion by denying his petition for certification to appeal. Although we agree that the court should have granted the petition for certification to appeal, the petitioner cannot prevail on the merits of his claims.

"Faced with the habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the [denial] of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must prove that the decision of the habeas court should be reversed on the merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Wright* v. *Commissioner of Correction*, 111 Conn. App. 179, 181–82, 958 A.2d 225 (2008), cert. denied, 290 Conn. 904, 962 A.2d 796 (2009).

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether

the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Internal quotation marks omitted.) *Duncan* v. *Commissioner of Correction*, 171 Conn. App. 635, 645, 157 A.3d 1169, cert. denied, 325 Conn. 923, 159 A.3d 1172 (2017).

In determining whether the second habeas court abused its discretion by denying the petitioner certification to appeal, we have reviewed the records of the petitioner's criminal and second habeas trials and the second habeas court's memorandum of decision. Given the underlying facts, the criminal charges against the petitioner, and the relative newness of *Salamon* and its retroactive application, we conclude that the petitioner's *Salamon* claim is adequate to deserve encouragement to proceed further, as the issues it raises are not entirely settled by our Supreme Court.[13] On the basis of our review of the petitioner's *Salamon* claim, however, we conclude that he cannot prevail on its merits.

## II

The petitioner claims that the second habeas court improperly determined that he was not denied certain constitutional and statutory rights. We disagree.

We are mindful that "[t]he habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Thomas* v. *Commissioner of Correction*, 141 Conn. App. 465, 470, 62 A.3d 534, cert. denied, 308 Conn. 939, 66 A.3d 881 (2013).

### A

The petitioner claims that the habeas court improperly concluded that his constitutional right to due process was not violated when he was convicted of kidnapping without the jury being instructed to determine whether the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crimes charged. We do not agree, given the particular facts of the present case.

We first set forth the law applicable to the petitioner's *Salamon* claim. "[I]t is well established that a defect

in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. . . . [T]he test for determining whether a constitutional error is harmless . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. . . . A jury instruction that improperly omits an essential element from the charge constitutes harmless error [only] if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that a jury verdict would have been the same absent the error . . . . The failure to charge in accordance with *Salamon* is viewed as an omission of an essential element . . . and thus gives rise to constitutional error." (Citations omitted; internal quotation marks omitted.) *Hinds* v. *Commissioner of Correction*, 321 Conn. 56, 77–78, 136 A.3d 596 (2016).

Our kidnapping law has changed substantially since the petitioner was convicted of kidnapping in violation of § 53a-92 (a) (2) (A) and (B) in 2005.[14] At that time, our Supreme Court had established that "all that is required under the [kidnapping] statute is that the defendant have abducted the victim and restrained [the victim] with the requisite intent. . . . Under the aforementioned definitions, the abduction requirement is satisfied when the defendant restrains the victim with the intent to prevent her liberation through the use of physical force. . . . Nowhere in this language is there a requirement of movement on the part of the victim. Rather, we read the language of the statute as allowing the restriction of movement alone to serve as the basis for kidnapping. . . . [O]ur legislature has not seen fit to merge the offense of kidnapping with other felonies, nor impose any time requirements for restraint, nor distance requirements for asportation, to the crime of kidnapping. . . . Furthermore, any argument that attempts to reject the propriety of a kidnapping charge on the basis of the fact that the underlying conduct was integral or incidental to the crime of sexual assault also must fail." (Internal quotation marks omitted.) *Pereira* v. *Commissioner of Correction*, 176 Conn. App. 762, 768, 171 A.3d 105, cert. denied, 327 Conn. 984, 175 A.3d 43 (2017).

In 2008, however, our Supreme Court reinterpreted our kidnapping statutes in *State* v. *Salamon*, supra, 287 Conn. 542. "Our legislature, in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from unlawful restraints by the presence of an intent to prevent a victim's liberation, intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping

in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." Id.

"Our Supreme Court further noted that [w]hen that confinement or movement is merely incidental to the commission of another crime, however, the confinement or movement must have exceeded that which was necessary to commit the other crime. [T]he guiding principle is whether the [confinement or movement] was so much the part of another substantive crime that the substantive crime could not have been committed without such acts . . . . In other words, the test . . . to determine whether [the] confinements or movements involved [were] such that kidnapping may also be charged and prosecuted when an offense separate from kidnapping has occurred asks whether the confinement, movement, or detention was merely incidental to the accompanying felony or whether it was significant enough, in and of itself, to warrant independent prosecution. . . . Conversely, *a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime.*" (Emphasis added; internal quotation marks omitted.) *Robles* v. *Commissioner of Correction*, 169 Conn. App. 751, 755, 153 A.3d 29 (2016), cert. denied, 325 Conn. 901, 157 A.3d 1146 (2017).

"[A] defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Consequently, when the evidence reasonably supports a finding that the restraint was *not* merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury. For purposes of making that determination, the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the [perpetrator], whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the [perpetrator's] risk of detection and whether the restraint created a significant danger or increased the

victim's risk of harm independent of that posed by the separate offense." (Emphasis in original; footnote omitted.) *State* v. *Salamon*, supra, 287 Conn. 547–48; see also *White* v. *Commissioner of Correction*, 170 Conn. App. 415, 428–29, 154 A.3d 1054 (2017) ("if the evidence regarding the perpetrator's intent—that is, whether he or she intended to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime—is susceptible to more than one interpretation, that question is one for the jury" [internal quotation marks omitted]).

In its memorandum of decision,[15] the second habeas court noted that the state had charged the petitioner in a substitute information with two separate counts of kidnapping: kidnapping in the first degree in violation of § 53a-92 (a) (2) (A) for abducting and restraining the victim with the intent to inflict physical injury upon him, and kidnapping in the first degree in violation of § 53a-92 (a) (2) (B) for abducting and restraining the victim with attempt to accomplish and advance the commission of a robbery.

The court then set forth the facts as the jury reasonably may have found them, as stated in our Supreme Court's decision affirming the petitioner's conviction. To wit: "[t]he victim bought two small bags of crack cocaine in exchange for $20, and he and the [petitioner], with Pierre and Smith following in a separate vehicle, drove to Pierre's apartment complex in New London so that the victim could use the drugs he had just purchased. Once they arrived at the apartment complex, Pierre, Smith and the [petitioner] pulled the victim out of the Saab and beat him. When this attack ceased, the victim was badly injured but still alive. The three men then put the victim into the backseat of the Saab and brought him to a nearby parking lot abutting Bates Woods, a park in New London. They pulled the victim out of the car once more, and this time beat him to death. Pierre, Smith and the [petitioner] then dragged the victim's body into Bates Woods, where they covered the body with dirt and plastic bags. The [petitioner] disposed of the victim's Saab by pushing it into a small pond behind the Waterford police department. *State* v. *Britton*, supra, 283 Conn. 601–602." (Internal quotation marks omitted.)

In its memorandum of decision, the second habeas court quoted the prosecutor's argument to the jury, which contended that there were two kidnappings. The prosecutor stated, in relevant part: "Now, the kidnapping in the first degree; there's actually two counts, the fourth and fifth counts [of the substitute information]. One kidnapping is distinguished from the other because one is that [the victim] was restrained with the intent, that is, the intent from not letting him [get free], and they restrained him with the intent to inflict physical injury upon him. The state asserts that this actually

happened on several occasions, this kidnapping. The [perpetrators] restrained [the victim] when they got into his Saab, when they got into his car at Michael Road, he was restrained there. In fact, the evidence is as [Jarvis] told us, that he was pulled out of the car and, as he was being pulled [out of the car, he was kicking as if he was trying to stay in] the car. The state would assert that the evidence says that that's one particular kidnapping. Then [the victim] is put back into his own car and driven to Bates Woods. . . .

"Now, the other kidnapping . . . is that a kidnapping, which is, as I indicated, a restraining with . . . the intent of a felony, and the felony, the state would assert in this case, was robbery, and the evidence of the robbery in this case actually comes from several sources, two of which come from the [petitioner]." (Internal quotation marks omitted.)

The second habeas court noted that the trial court charged the jury extensively with respect to kidnapping, both as a predicate for the capital felony[16] and felony murder charges,[17] as well as for the separate kidnapping counts,[18] and robbery in the first degree,[19] but that the instructions did not comport with *Salamon*. The second habeas court stated that it was not disputed that the jury found that the victim was moved or restrained at least two separate times, as alleged in the kidnapping counts: once to facilitate injury to the victim and once to rob him. According to the second habeas court, these movements or restrictions of the victim had a clearly defined and distinct significance from each other and from the other charged offenses. The court also concluded that "a reasonable fact finder could clearly determine that the restraint and/or movement of the victim [were] not merely incidental to the other offenses. That is, the movements and/or confinements had independent criminal significance."[20] The court, therefore, denied the petitioner's *Salamon* claim because the underlying facts would not have warranted a *Salamon* instruction. Moreover, the court stated, even if the petitioner were entitled to a *Salamon* instruction, the absence of such an instruction was harmless error.[21] We agree with the second habeas court that the failure to give a *Salamon* instruction was harmless beyond a reasonable doubt.

In addition to the two kidnapping charges, the petitioner was charged with capital felony, murder, felony murder and robbery. In such circumstances, *State* v. *Fields*, 302 Conn. 236, 247, 24 A.3d 1243 (2011), instructs that ordinarily a *Salamon* instruction should have been given. At his criminal trial, the petitioner all but conceded that the perpetrators robbed and assaulted the victim. See footnote 6 of this opinion. Given his concession, his defense focused on the capital felony and murder charges.[22]

If a reviewing court determines that a *Salamon*

instruction on incidental restraint should have been given, it must then determine whether the failure to give the instruction was harmful. In *Luurtsema* v. *Commissioner of Correction,* supra, 299 Conn. 740, our Supreme Court stated that "the proper standard to [determine whether a petitioner's kidnapping conviction requires reversal due to the omission of a *Salamon* instruction] would be the harmless error standard applied on direct appeal. . . . On direct appeal, [i]t is well established that a defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. . . . [T]he test for determining whether a constitutional error is harmless . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. . . . A jury instruction that improperly omits an essential element from the charge constitutes harmless error [only] if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . . The failure to charge in accordance with *Salamon* is viewed as an omission of an essential element . . . and thus gives rise to constitutional error." (Citations omitted; internal quotation marks omitted.) *Hinds* v. *Commissioner of Correction,* supra, 321 Conn. 77–78.

On appeal, the petitioner argues that the two kidnapping charges were based on (1) the alleged restraint of the victim during the robbery, and (2) the alleged abduction of the victim from the parking lot to Bates Woods. The petitioner's argument assumes that the robbery occurred in the Saab or parking lot where the victim was first beaten. He analyzed the *Salamon* risk factors as follows: With respect to the events that took place in the parking lot, the petitioner contends that the state did not allege that the perpetrators confined the victim at any time during which they were not attacking him. He argues that the perpetrators restrained the victim only when they were attacking him. As a matter of law and as recited in the court's instruction on robbery,[23] the use or threatened use of physical force is inherent in the crime of robbery. The evidence, however, demonstrates that the petitioner moved the victim when he was not being attacked. Jarvis testified that the perpetrators dragged the victim from the Saab and beat him motionless. The state contended that the robbery occurred at that point. The petitioner picked up the motionless victim, put him on the backseat of the Saab, transported him to Bates Woods, beat him again and murdered him. Putting the victim back into the Saab, transporting him to Bates Woods, and the ensuing violence was not necessary to the crime of robbery.[24] Simply put, abducting and moving the motionless body of the victim exceeded what

was necessary to commit the crime of robbery.

Moreover, it does not matter at exactly which point in time the perpetrators took the victim's money and watch. The taking could have occurred at any number of points: during the struggle inside the Saab; when the victim was lying motionless on the ground of the parking lot; while he was lying on the backseat of the Saab; after he was driven to Bates Woods; or when he was again pulled from the Saab at Bates Woods. Each of those potential points of taking are separated in time and by distinct movements. If the taking occurred during the struggle inside the Saab, at a minimum, pulling the victim from the Saab, beating him, putting him back in the Saab after he had been beaten motionless was not incidental to or necessary to the taking. If the taking occurred when the victim was placed on the backseat of the Saab after he had been beaten motionless, the initial struggle in the Saab preceded the taking and was not incidental or necessary to it, nor was the asportation to Bates Woods. If the taking occurred after the victim was dead, restraining the victim in and pulling him from the Saab on two occasions was not incidental to or necessary to the commission of the taking. Under any scenario, no reasonable juror could conclude that the restraint or movement imposed on the victim after he was beaten and lying motionless on the ground of the parking lot was *necessary* for the commission of robbery.

With respect to the kidnapping charge alleging that the petitioner restrained the victim with the intent to inflict physical injury upon him, the evidence demonstrated that the perpetrators restrained the victim in the Saab and assaulted him, causing him physical injury. The victim's blood was detected in the blood splatters on the visor above the driver's seat. After restraining the victim and causing him physical injuries, the perpetrators exceeded what was necessary to commit assault with the intent to cause physical injury by removing the struggling victim from the Saab and beating him motionless. As to the kidnapping charge that the petitioner abducted and restrained the victim in order to inflict physical injury, the evidence demonstrates that the victim was placed in the backseat of the Saab, after he had been beaten and rendered motionless, transported to Bates Woods, beaten and murdered. Driving the victim to Bates Woods was not necessary to inflict physical injury on the victim. That was accomplished initially during the struggle in the Saab and again when he was beaten while he was lying motionless on the parking lot.

In *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 430–31, this court noted that in *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 92–93, our Supreme Court categorized *Salamon* incidental restraint cases depending on the degree of confinement

and movement. "Although no minimum period of restraint or degree of movement is necessary for the crime of kidnapping, an important facet of cases where the trial court has failed to give a *Salamon* instruction and that impropriety on appellate review has been deemed harmless error is that longer periods of restraint or greater degrees of movement demarcate separate offenses. See *State* v. *Hampton*, [293 Conn. 435, 463–64, 988 A.2d 167 (2009)] (defendant confined victim in car and drove her around for approximately three hours before committing sexual assault and attempted murder); *State* v. *Jordan*, [129 Conn. App. 215, 222–23, 19 A.3d 241 (2011)] (evidence showed the defendant restrained the victims to a greater degree than necessary to commit the assaults even though assaultive behavior spanned entire forty-five minute duration of victims' confinement) [cert. denied, 302 Conn. 910, 23 A.3d 1248 (2011)]; *State* v. *Strong*, [122 Conn. App. 131, 143, 999 A.2d 765] (defendant's prolonged restraint of victim while driving for more than one hour from one town to another not merely incidental to threats made prior to the restraint) [cert. denied, 298 Conn. 907, 3 A.3d 73 (2010)]; and *State* v. *Nelson*, [118 Conn. App. 831, 860–62, 986 A.2d 311] (harmless error when defendant completed assault and then for several hours drove victim to several locations) [cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010)]. Thus, as these cases demonstrate, multiple offenses are more readily distinguishable—and, consequently, more likely to render the absence of a *Salamon* instruction harmless—when the offenses are separated by greater time spans, or by more movement or restriction of movement." (Internal quotation marks omitted.) *White* v. *Commissioner of Correction*, supra, 430–31; see also *Pereira* v. *Commissioner of Correction*, supra, 176 Conn. App. 773–74 (habeas court properly concluded restraint and confinement of victim occurred separately from and was completed prior to murder).

The second habeas court cited the *Hampton* and *Nelson* cases in support of its conclusion that the failure to give a *Salamon* instruction in the present case was harmless error, if any. We agree with the second habeas court's conclusion that the failure to give the *Salamon* charge in the present case was harmless. The evidence demonstrates that the petitioner, along with the other perpetrators, engaged in several offenses during which he restrained and moved the victim in a manner not merely incidental to or necessary for the commission of assault or robbery, and that the offenses were separated by distinct periods of time and by more movement or restraint of movement. Accordingly, with respect to both charges of kidnapping, we conclude, beyond a reasonable doubt, that the "omitted element was uncontested and supported by overwhelming evidence such that the jury verdict would have been the same absent the error . . . ." (Internal quotation marks omitted.)

*Hinds* v. *Commissioner of Correction,* supra, 321 Conn. 77–78. We thus conclude that the "evidence reasonably supports a finding that the restraint was *not* merely incidental to the commission of some other, separate crime . . . ." (Emphasis in original.) *State* v. *Salamon,* supra, 287 Conn. 547–48.[25]

For the foregoing reasons, although the second habeas court should have granted the petitioner certification to appeal, the court did not improperly deny his petition for a writ of habeas corpus with regard to his allegation that he was denied due process because the jury was not instructed pursuant to *Salamon*.

B

The petitioner claims that the habeas court improperly concluded that his claim of ineffective assistance of trial counsel was barred by the doctrine of res judicata. We disagree.

In its memorandum of decision, the second habeas court found that the petitioner alleged in the first count of his second habeas petition that his trial counsel rendered deficient performance in that Attorneys Kevin Barrs and M. Fred DeCaprio (1) presented inadequate evidence during the hearing on the motion to suppress the petitioner's statement to the police, (2) failed to investigate and demonstrate that the victim's body was mishandled by first responders, and (3) failed to introduce exculpatory evidence regarding the contradiction between Carr's statement to the police, and a public defender's investigation report and his trial testimony. The respondent, the Commissioner of Correction, denied the allegations and averred that the ineffective assistance of counsel claim was successive because it was raised in the first habeas petition. The petitioner replied that the claim in the second habeas petition does not present the same ground as presented in the first habeas petition.

The second habeas court cited *Carter* v. *Commissioner of Correction*, 109 Conn. App. 300, 950 A.2d 619 (2008), for the law concerning successive petitions. "[A] petitioner may bring successive petitions on the same legal grounds if the petitions seek different relief. . . . But where successive petitions are premised on the same legal grounds and seek the same relief, the second petition will not survive a motion to dismiss unless the petition is supported by allegations and facts not reasonably available to the petitioner at the time of the original petition." (Internal quotation marks omitted.) Id., 306. The second habeas court also noted that Connecticut courts repeatedly have applied the doctrine of res judicata to claims duplicated in successive habeas petitions. See *Moody* v. *Commissioner of Correction*, 127 Conn. App. 293, 297–98, 14 A.3d 408, cert. denied, 300 Conn. 943, 17 A.3d 478 (2011).

The court further determined that the petitioner's

first habeas petition was premised on four alleged deficiencies of trial counsel. The petitioner requested that the first habeas court vacate his conviction and sentence, and remand the matter to the criminal court for further proceedings. The claim of ineffective assistance of trial counsel in the petitioner's second habeas petition is identical to the one in the first habeas petition. The court stated that unless the petitioner presented newly discovered evidence that was not reasonably available at the time of the first habeas trial, the petitioner is barred from relitigating a claim of ineffective assistance of trial counsel. In addition, the court found that all of the witnesses at the second habeas trial either testified at the first habeas trial or were available to testify at that trial. Moreover, the documentary evidence the petitioner offered at the second habeas trial contained no new evidence, let alone evidence that was not reasonably available at the time of the first habeas trial. The court concluded that the claim of ineffective assistance of trial counsel alleged in the second habeas petition was successive and was therefore barred by the doctrine of res judicata.

The petitioner's claim of ineffective assistance of trial counsel centers on the admission into evidence of Carr's February 16, 1999 statement to the police regarding a conversation he had had with the petitioner about the victim's death. Carr testified at the petitioner's criminal trial, but he could not remember his conversation with the petitioner and could not testify about it. He remembered signing the statement he gave to the police, but he claimed that the police made it up. Carr's statement to the police was admitted into evidence as a prior inconsistent statement pursuant to *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

On appeal, the petitioner claims that his trial counsel were deficient in failing to present evidence that Carr's trial testimony that he had no recollection of the conversation with the petitioner was consistent with a report generated by Ligia Werner, an investigator with the Office of the Chief Public Defender, who interviewed him on June 25, 2001. Werner's report indicates that when she spoke with Carr, he had no recollection of the conversation with the petitioner or its contents. At the criminal trial, Carr testified that he had no memory of Werner's interview of him. At the second habeas trial, the petitioner argued that Werner's report should have been offered into evidence as Carr's prior consistent statement.

At the second habeas trial, the petitioner argued that his trial counsel's performances were deficient because they failed to place the facts regarding Werner's interview with Carr before the jury or to call her as a witness to substantiate his lack of memory regarding his conversation with the petitioner. The petitioner claims that

trial counsel should have called Werner to testify. The second habeas court, however, found that the petitioner's claim was based on the same legal ground asserted in his first habeas petition. Moreover, Werner's report was known to trial counsel, and Werner was available to testify at the first habeas trial. The court concluded, therefore, that the petitioner's claim was successive.

"The doctrine of res judicata provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made. . . . The doctrine . . . applies to criminal as well as civil proceedings and to state habeas corpus proceedings. . . . However, [u]nique policy considerations must be taken into account in applying the doctrine of res judicata to a constitutional claim raised by a habeas petitioner. . . . Specifically, in the habeas context, in the interest of ensuring that no one is deprived of liberty in violation of his or her constitutional rights . . . the application of the doctrine of res judicata . . . [is limited] to claims that actually have been raised and litigated in an earlier proceeding." (Internal quotation marks omitted.) *Kearney* v. *Commissioner of Correction*, 113 Conn. App. 223, 233, 965 A.2d 608 (2009).

Our Supreme Court has "recognized only one situation in which a court is not legally required to hear a habeas petition. In *Negron* v. *Warden*, [180 Conn. 153, 158, 429 A.2d 841 (1980), the court] observed that pursuant to Practice Book § . . . [23-29], [i]f a previous application brought on the same grounds was denied, the pending application may be dismissed without hearing, *unless it states new facts or proffers new evidence not reasonably available at the previous hearing.*" (Emphasis in original; internal quotation marks omitted.) *Kearney* v. *Commissioner of Correction*, supra, 113 Conn. App. 234.

Given the facts of the present matter and the law regarding successive petitions, we conclude that the second habeas court properly determined that the petitioner's claim of ineffective assistance of trial counsel was successive and therefore was barred by the doctrine of res judicata. The second habeas petition is grounded in the claim of ineffective assistance of trial counsel and alleges no new facts that were not known at the time of the first habeas trial. The second habeas court, therefore, did not abuse its discretion by denying the petitioner certification to appeal on his claim of ineffective assistance of trial counsel, as it is not an issue debatable among jurists of reason that a court could resolve it in a different manner, nor is it deserving of encouragement to proceed further.

C

The petitioner claims that the habeas court improp-

erly determined that his statutory and constitutional rights to the effective assistance of first habeas counsel were not violated. In his second habeas petition, the petitioner alleged that the performance of his first habeas counsel, Christopher Duby, was deficient because he failed to allege that the petitioner's trial counsel rendered ineffective assistance by (1) failing to present evidence and testimony during the hearing on the motion to suppress the petitioner's statement to the police, (2) failing to investigate defense witnesses to demonstrate that first responders mishandled the victim's body, and (3) failing to introduce exculpatory evidence through witnesses to show the contradiction between Carr's statement to the police, and his statement to an investigator from the public defender's office and his trial testimony, and (4) failing to raise the *Salamon* jury instruction issue in the first habeas petition. He concedes, however, that the second habeas court properly subsumed his claim of ineffective assistance of trial counsel into his claim of ineffective assistance of first habeas counsel.

To prevail on a claim of ineffective assistance of habeas counsel that is predicated on the ineffective assistance of trial counsel, a petitioner must demonstrate that both trial and habeas counsel were ineffective. See *Stanley* v. *Commissioner of Correction*, 164 Conn. App. 244, 254, 134 A.3d 253, cert. denied, 321 Conn. 913, 136 A.3d 1274 (2016). "[When] applied to a claim of ineffective assistance of prior habeas counsel, the *Strickland* [v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] standard requires the petitioner to demonstrate that his prior habeas counsel's performance was ineffective and that this ineffectiveness prejudiced the petitioner's prior habeas proceeding. . . . [T]he petitioner will have to prove that one or both of the prior habeas counsel, in presenting his claims, was ineffective and that effective representation by habeas counsel establishes a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . ." (Emphasis omitted; internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 108 Conn. App. 201, 209–10, 947 A.2d 435, cert. denied, 288 Conn. 911, 953 A.2d 652 (2008). A petitioner who claims ineffective assistance of habeas counsel on the basis of ineffective assistance of trial counsel must satisfy *Strickland* twice; that is, he must show that his appointed habeas counsel and his trial counsel were ineffective. *Lozada* v. *Warden*, 223 Conn. 834, 842, 613 A.2d 818 (1992).

With respect to the motion to suppress the petitioner's statement to the police, the second habeas court found that the petitioner's motion to suppress was unsuccessful prior to trial, on appeal, and at his first habeas trial. At the second habeas trial, DeCaprio and Barrs testified, but the court found that neither of them

offered any evidence of what could have been done to make their representation on the motion to suppress at trial more effective. The petitioner told Duby that he believed that he was in custody and not free to leave when the police were questioning him. Duby interviewed some of the police officers involved. The first habeas court concluded that even if the petitioner had testified at the suppression hearing as he testified at the habeas trial, the trial court would not have granted the motion to suppress and, therefore, the petitioner was not prejudiced by counsel's decision not to offer his testimony. In resolving the habeas appeal, this court stated that the petitioner's testimony at the first habeas trial did not establish any credible new or additional facts for a court to find that the petitioner was in custody, thus triggering his *Miranda*[26] rights. *Britton* v. *Commissioner of Correction*, supra, 141 Conn. App. 651–57. This court thus affirmed the finding of the habeas court that the petitioner was not prejudiced by his attorney's failure to offer his testimony at the suppression hearing. On the basis of the foregoing history of litigation and appeals, the second habeas court found that the petitioner failed to demonstrate that Duby was ineffective with respect to his investigation of ineffective assistance of trial counsel regarding the suppression of the petitioner's statement.

With regard to the petitioner's claim that Duby provided ineffective assistance because he failed to investigate and subpoena witnesses to demonstrate that first responders to the crime scene mishandled the victim's body, the second habeas court found that Duby spoke with Carver and hired a medical expert because he was not convinced that the cause of death was accurate, and that the petitioner believed that the victim's body had been moved by the police. The expert's testimony was not particularly helpful to the petitioner because the expert was of the opinion that if the victim's body had been moved, it did not affect the autopsy results, and his opinions were consistent with Carver's. The second habeas court concluded that the evidence the petitioner presented failed to demonstrate that Duby's performance was ineffective to demonstrate that first responders at the crime scene mishandled the victim's body.

As to the petitioner's claim that Duby failed to introduce adequate exculpatory evidence to show the contradiction between Carr's statement to the police and his statement to Werner, and his trial testimony, DeCaprio testified that Carr's testimony at the criminal trial was adverse to the statement he gave to the police on February 16, 1999. After he gave the statement to the police, but prior to testifying at the petitioner's criminal trial in 2004, Carr testified at Pierre's criminal trial. Werner testified at the second habeas trial that she interviewed Carr on June 27, 2001, and prepared a summary of the interview. Carr's interview with Werner,

and his testimony at Pierre's criminal trial and at the petitioner's criminal trial were consistent, but contradicted his February 16, 1999 statement to the police. At both criminal trials, Carr testified that he could not remember anything he said to the police. His police statement was admitted at both criminal trials as a prior inconsistent statement pursuant to *State* v. *Whelan*, supra, 200 Conn. 753.

The second habeas court reviewed all of Carr's criminal trial testimony and found that he repeatedly testified that he had no memory of what he said to the police.[27] Although the trial court admitted Carr's police statement pursuant to *Whelan*, the petitioner did not challenge the evidentiary ruling on direct appeal. Pierre, however, did challenge the admission of Carr's police statement in his direct appeal. Our Supreme Court rejected Pierre's claim. *State* v. *Pierre*, 277 Conn. 42, 53–86, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006). The second habeas court stated that it failed to see how a similar claim raised at the petitioner's first habeas trial would have reached a different outcome. The petitioner presented no evidence at the second habeas trial that the court considered exculpatory. The jury was apprised of the contradiction between Carr's statement to the police and his trial testimony. The second habeas court, therefore, concluded that the third alleged basis of ineffective assistance of first habeas counsel failed.

The petitioner also alleged that Duby was ineffective for failing to raise a *Salamon* jury instruction claim in the first habeas petition. On the basis of Duby's testimony at the second habeas trial, the court found that Duby was aware of *Salamon* and its progeny at the time he was filing the amended petition, but that *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 740, had not yet been decided. Duby had considered raising a *Salamon* claim but ultimately decided that the trial court's jury instructions on kidnapping were not defective.

In considering this claim of ineffective assistance of first habeas counsel, the second habeas court cited the relevant law. "[A] defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case." (Footnote omitted.) *State* v. *Salamon*, supra, 287 Conn. 547. "Connecticut courts ultimately assess the importance of a *Salamon* instruction by scrutinizing how a reasonable jury would per-

ceive the defendant's restraint of the victim, particularly with respect to when, where, and how the defendant confined or moved the victim." *Wilcox* v. *Commissioner of Correction*, 162 Conn. App. 730, 745, 129 A.3d 796 (2016).

The court reviewed the two kidnapping charges against the petitioner, i.e., kidnapping in the first degree for abducting and restraining the victim with intent to inflict physical injury, and abducting and restraining the victim with the intent to accomplish and advance the commission of a robbery. The court quoted the facts reasonably found by the jury pursuant to our Supreme Court's decision in *State* v. *Britton*, supra, 283 Conn. 601–602. It also examined the prosecutor's closing argument and the relevant portions of the trial court's jury instruction.

The second habeas court found that the parties did not dispute that the jury found that the victim had been moved and/or restrained on at least two separate occasions as alleged in the two kidnapping counts: "[o]nce to facilitate injury to him, another time to rob him." The movements and/or restrictions had a clearly defined and distinct significance from each other, and exceeded that which was necessary to commit assault and robbery. In other words, the movements or restraints had independent criminal significance. The court, therefore, concluded that the underlying facts would not have warranted a jury instruction pursuant to *Salamon*, but that if such a charge were warranted, the absence of a *Salamon* charge was harmless. See, e.g., *State* v. *Hampton*, supra, 293 Conn. 455–64 (lack of *Salamon* instruction harmless impropriety given particular facts of case). The second habeas court concluded, therefore, that Duby was not ineffective for failing to raise a *Salamon* claim in the first habeas petition. On the basis of our plenary review of the record and the law, we agree with the conclusion of the second habeas court.

For the foregoing reasons, we conclude that the second habeas court abused its discretion by failing to grant the petition for certification to appeal, but properly denied the petitioner's second petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] When Jeffrey Smith, another of the perpetrators, was sentenced, the sentencing court, *Schimelman, J.*, "found that the incident was 'vicious' and it was done for 'a few dollars and a fake wristwatch.'" *State* v. *Smith*, Superior Court, judicial district of New London, Docket No. KNLCR-99-250704, 2012 WL 5278688, *1 (October 10, 2012) (sentence review division).

[2] Jarvis testified at trial that he remained in his vehicle and witnessed the perpetrators assault the victim in the apartment parking lot. When the perpetrators drove away from the apartment parking lot, Jarvis was unable to follow them and went home. Several days later, he visited Smith at his home. When Jarvis asked, Smith told him that the victim died at Bates Woods.

[3] On February 16, 1999, Carr gave a written statement to the state police. Carr stated in part that in the summer of 1998, the perpetrators helped him

get a job with a cleaning company. Company employees traveled together in a van to and from work sites. As they were being driven home one day, Carr overheard the petitioner and Pierre talking about the victim's murder. Carr asked them what they were talking about. The petitioner told Carr how the victim had come to Lucky's, how the perpetrators and the victim drove to Pierre's, how the perpetrators beat the victim and drove him to Bates Woods and beat him again. Carr also stated that the petitioner "started to brag and said that he took a pole and placed it into the [victim's] mouth. [The petitioner] said that he really jammed the pole down his throat and then twisted the pole to break his neck. [The petitioner] said that prior to doing this with the pole, the [victim] was still alive but after he did this, the [victim] died immediately." At the petitioner's criminal trial, Carr did not remember his conversation with the petitioner and could not testify about it.

Prior to the start of the petitioner's criminal trial, Carr was interviewed by an investigator from the chief public defender's office, Ligia Werner. In her interview report, Werner indicated that Carr had no recollection of his conversation with the petitioner or the contents of his statement. See part III of this opinion.

[4] During the course of his autopsy of the victim, Carver discovered that the victim had suffered several broken ribs and that his jaw and facial bones had been fractured.

[5] With respect to the capital felony charge, the state's attorney alleged that the petitioner, with intent to cause the death of the victim, whom he had kidnapped, did cause the death of the victim during the course of the kidnapping.

In count four of the substitute information, the state's attorney accused the "[petitioner] of kidnapping in the first degree and charge[d] that at the city of New London and the town of Waterford on or about the 23rd day of August, 1998, [the petitioner] did abduct [the victim] and restrained [the victim] with intent to inflict physical injury upon [the victim] in violation of § 53a-92 (a) (2) (A) of said statutes."

In count five of the substitute information, the state's attorney accused the "[petitioner] of kidnapping in the first degree and charge[d] that at the city of New London and the town of Waterford on or about the 23rd day of August, 1998, the [petitioner] did abduct [the victim] and [restrained] the victim with intent to accomplish and advance the commission of a robbery in violation of [§] 53a-92 (a) (2) (B) of said statutes."

In count six of the substitute information, the state's attorney accused the "[petitioner] of robbery in the first degree and charge[d] that at the city of New London and the town of Waterford on or about the 23rd day of August, 1998, the [petitioner], in the course of the commission of the crime of robbery and of immediate flight therefrom, the [petitioner, Smith and Pierre] caused serious physical injury to [the victim], who was not a participant in the crime, in violation of [§] 53a-134 (a) (1) of said statutes."

[6] The petitioner's theory of defense was that he could not be guilty of capital murder because he did not have the intent to cause the death of the victim and that he was not the one who killed the victim. He argued that the incident was a drug deal gone badly and that the victim died in a manner that was not planned. The petitioner conceded, however, that he was involved in the incident and that the state had proved that he assaulted and robbed the victim.

[7] On direct appeal, the petitioner claimed that the trial court improperly denied his motion to suppress the statements he gave to the police, and denied him a fair trial and an impartial jury by explaining to the jury that if it found him guilty of capital felony, it would hear evidence regarding aggravating factors during the penalty phase of the trial. See *State* v. *Britton*, supra, 283 Conn. 600–601.

[8] The petitioner alleged that his trial counsel "rendered ineffective assistance by failing (1) to adequately advise him regarding a plea offer, (2) to offer the petitioner's testimony on the circumstances of his giving a statement to police about his involvement in the victim's death and (3) to object to the trial court's preliminary instructions to the venire panel." *Britton* v. *Commissioner of Correction*, supra, 141 Conn. App. 646.

[9] Attorney Kevin Barrs and Attorney M. Fred DeCaprio represented the petitioner at his criminal trial. In his second habeas petition, the petitioner alleged that his trial counsel rendered ineffective assistance with respect to (1) the motion to suppress his statement to the police, (2) the investigation of first responders' handling of the victim's body, and (3) contradictions between Carr's statement to the police and his trial testimony.

[10] Attorney Christopher Duby represented the petitioner at the first habeas trial. The petitioner alleged that Duby's representation was ineffective with respect to (1) the motion to suppress the petitioner's statement to the police, (2) the investigation of the first responders' handling of the victim's body, (3) contradictions between Carr's statement to the police and his trial testimony, and (4) the failure to raise a *Salamon* claim.

[11] *Sanseverino* was overruled in part by *State* v. *DeJesus*, 288 Conn. 418, 437, 953 A.2d 45 (2008), and superseded in part after reconsideration by *State* v. *Sanseverino*, 291 Conn. 574, 579, 969 A.2d 710 (2009).

[12] The court's conclusion is an inaccurate statement of the standard governing *Salamon* claims raised in a collateral proceeding. The standard set forth in *Hinds* v. *Commissioner of Correction*, 321 Conn. 56, 136 A.3d 596 (2016), is whether "a defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. . . . [T]he test for determining whether a constitutional error is harmless . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. . . . A jury instruction that improperly omits an essential element from the charge constitutes harmless error [only] if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Internal quotation marks omitted.) Id., 77–78.

[13] Although we conclude that the petitioner's claims of ineffective assistance of trial and habeas counsel are frivolous, they are interwoven with his *Salamon* claim.

[14] The petitioner was convicted of the underlying crimes in January, 2005; *Salamon* was decided in 2008. Our Supreme Court made its holding in *Salamon* retroactive with respect to collateral attacks on a kidnapping conviction in *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 740.

[15] The second habeas court addressed the substance of the petitioner's *Salamon* claim in association with the petitioner's claim that his first habeas counsel rendered ineffective assistance by failing to raise a *Salamon* claim in the first habeas petition. The court incorporated its *Salamon* analysis when it addressed the petitioner's stand-alone *Salamon* claim.

[16] Judge Schimelman charged the jury with respect to capital felony, in part, as follows: "The first count of the information accuses [the petitioner] of capital felony and charges that at the city of New London and town of Waterford on or about the twenty-third day of August, 1998, the [petitioner], with intent to cause the death of [the victim], whom he had kidnapped, did cause the death of [the victim] during the course of the kidnapping and before [the victim] was able to return and be returned to safety . . . .

"The second essential element of the crime of capital felony . . . is that the [petitioner] kidnapped another person . . . [the victim]. For purposes of this first count, our Penal Code provides [that] a person is guilty of kidnapping when he abducts another person. . . .

"Abduct means to restrain a person with intent to prevent his liberation by either A, secreting or holding him in a place where he is not likely to be found or, B, using or threatening to use physical force or intimidation.

"Restrain means to restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with his liberty, by moving him from one place to another or by confining him in the place where either the restriction began or in a place to which he had been moved without consent. Without consent includes but is not limited to deception. The abduction and the restraining must be intentional. There must be an intent to interfere substantially with the alleged victim's liberty either by, one, secreting or hiding him in a place where he is not likely to be found or, two, by using or threatening to use physical force or intimidation."

[17] Judge Schimelman charged the jury with respect to felony murder, in part, as follows: "There are three essential elements, each of which the state must prove beyond a reasonable doubt for you to find [the petitioner] guilty of felony murder. One, the [petitioner], acting with one or more persons, committed the crime of kidnapping or the crime of robbery; two, the death of [the victim] was caused by the [petitioner] or another participant, and that person whose death was caused was not a participant in the predicate crime of robbery or kidnapping; and three, the [petitioner] or another participant caused the death of [the victim] in the course of or in furtherance of the commission of the crime of kidnapping or robbery or of flight therefrom. . . .

"First, with respect to the predicate crime of kidnapping for the purpose of [felony murder], a person is guilty of kidnapping when he abducts another person. [The court repeated its instruction regarding abduction and restraint.] . . . Kidnapping is a continuing crime that commences once a person is wrongfully deprived of freedom and continues for as long as that unlawful detention lasts. The law which makes kidnapping criminal punishes interference with personal liberty and restricting the alleged victim's freedom of movement. You cannot convict the [petitioner] of kidnapping unless you first find that there was a restriction of movement and that it was done intentionally, that it was done without right or authority of law, and that it had the effect of interfering substantially with the alleged victim's liberty. . . .

"With respect to the other predicate crime of robbery for purposes of [felony murder], a person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking or compelling the owner of such property to deliver up the property or to engage in other conduct which aids in the commission of the larceny. . . .

"A larceny is a theft or stealing. A person commits larceny when, with intent to deprive another person of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains, or withholds such property from an owner."

[18] Judge Schimelman charged the jury with respect to the kidnapping counts, in relevant part, as follows:

"For you to find the [petitioner] directly committed the crime of kidnapping in the first degree, § 53a-92 (a) (2) (A), as a principal, the state must prove each of the following essential elements beyond a reasonable doubt: One, the [petitioner] abducted the alleged victim, two, the [petitioner] unlawfully restrained the person he abducted and, three, he did so with intent to inflict physical injury on the alleged victim. [The court iterated its instructions regarding abduction, restraint, and kidnapping.] . . .

"Again, the term physical force has its everyday meaning. It includes any violence or superior physical strength against the alleged victim. It is for you to decide whether the evidence proves that physical force was used by the [petitioner], and whether it actually produced and resulted in the accomplishment of the restraint which is charged here.

"The third essential element of kidnapping in the first degree in violation of § 53a-92 (a) (2) (A) is that the [petitioner] abducted and restrained the alleged victim . . . with the intent to inflict physical injury upon him. Physical injury means an impairment of physical condition or pain. . . .

"The fifth count of the information accuses [the petitioner] of the crime of kidnapping in the first degree and charges . . . that [the petitioner] did abduct [the victim] and restrained [the victim] with intent to accomplish and advance the commission of a robbery in violation of § 53a-92 (a) (2) (B) . . . . [T]he state must prove each of the following essential elements beyond a reasonable doubt: One, the [petitioner] abducted the alleged victim, two, the [petitioner] unlawfully restrained the person he abducted and, three, he did so with the intent to accomplish or advance the commission of a felony, here, the crime of robbery."

[19] With respect to robbery in the first degree, Judge Schimelman charged the jury in relevant part: "The sixth . . . count of the information accuses [the petitioner] of robbery in the first degree and . . . [charges that] in the course of the commission of the crime of robbery and of immediate flight therefrom, [the perpetrators] caused serious physical injury to [the victim], who was not a participant in the crime. . . . In order to find the [petitioner] guilty of this crime . . . the state must prove beyond a reasonable doubt, one, the [petitioner] committed a robbery and, two, in the course of the commission of that robbery or immediate flight therefrom, the [petitioner] or another participant in the crime caused serious physical injury to a person who was not a participant in the crime. . . .

"Serious physical injury means physical injury which creates a substantial risk of death or which causes serious impairment of health or serious loss or impairment of any function of any bodily organ for purposes of this sixth count."

[20] But see footnote 12 of this opinion regarding the proper standard governing *Salamon* claims.

[21] In support of its conclusion that the error in failing to give a *Salamon* instruction, if any, was harmless, the second habeas court cited *State* v. *Hampton*, 293 Conn. 435, 455–64, 988 A.2d 167 (2009) (lack of *Salamon*

instruction harmless error given particular facts), and *State* v. *Nelson*, 118 Conn. App. 831, 834–36, 856, 986 A.2d 311 (same), cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010).

[22] The record contains no evidence as to precisely when the perpetrators took the victim's watch and money. The robbery, therefore, is central to our analysis of the petitioner's *Salamon* claim. Robbery generally may be defined as larceny by force. See *State* v. *Townsend*, 206 Conn. 621, 626, 539 A.2d 114 (1988). As such, the petitioner contends that the perpetrators' restraint and movement of the victim was incidental to the crime of robbery.

[23] The court instructed the jury [with respect to felony murder] in relevant part as follows: "In order for you to find the [petitioner] directly committed the predicate crime of robbery as a principal, the state must prove that the [petitioner], in the course of committing a larceny, used or threatened the immediate use of physical force upon another person, that is, [the victim], to prevent or overcome resistance to the taking of the property or to its retention or compelling [the victim] to deliver up the property or to engage in other conduct which aided in the commission of the alleged larceny. . . .

"The gist of the crime of robbery is the act of committing a larceny by physical force or threat of immediate use of physical force. Like the intent element of larceny, the remaining essential elements of the offense of robbery must be done intentionally, as I have explained that. Physical force or the threat of its immediate use is a common, readily understandable expression having its ordinary meaning. It means the application or threat of external physical power to another person. Physical force or its immediate threat must be for the purpose of committing the larceny. Such physical force must be used or threatened for the purpose of preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking or for the purpose of compelling the owner of the property to deliver up the property or to engage in other conduct which aids in the commission of the larceny. Robbery requires proof of larceny by force or the threat of use of force, and proof of larceny requires proof of a taking of property with the specific intent to deprive the owner of its possession permanently."

[24] On appeal, the petitioner argues that the victim may have been dead when he was put in the backseat of the Saab. That argument is belied by the petitioner's statement to the police that the victim was alive at that time.

[25] Even though we conclude, on the basis of the facts of this particular case, that the petitioner's intent is not susceptible to more than one interpretation; see *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 429; we have undertaken an analysis of the six *Salamon* jury instruction factors; *State* v. *Salamon*, supra, 287 Conn. 547–48; which supports our conclusion that the petitioner's restraint and movement of the victim was more than was necessary to complete the crimes of assault and robbery.

The petitioner's restraint of the victim was extensive: it began inside the Saab, continued at the apartment parking lot where he beat him, and continued when he put the injured victim back in the Saab and drove him to Bates Woods where he put a pipe in the victim's mouth and twisted it, resulting in the victim's death. The restraint and movement that occurred after the petitioner beat the victim at the apartment parking lot was unnecessary to complete the crimes of assault and robbery and, therefore, had independent significance. The crimes could have been completed prior to returning the victim to the Saab and driving him to Bates Woods. The petitioner's restraint and movement of the badly injured victim from the apartment parking lot to Bates Woods prevented the victim from summoning assistance. The petitioner's moving the victim obviously reduced the petitioner's risk of detection. Finally, the petitioner's restraint and movement of the victim greatly increased the risk of harm to the victim, who was murdered. Under the circumstances of this case, we conclude that the jury was not misled by the failure to give the *Salamon* charge and, therefore, the failure was harmless beyond a reasonable doubt.

[26] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[27] Carr died and was not available to testify at the second habeas trial.