******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The petitioner, who had previously been convicted of various crimes in
connection with the shooting death of the victim, sought a writ of habeas
corpus, claiming ineffective assistance of his previous habeas counsel,
V. Following an evidentiary hearing, the habeas court denied the petition,
concluding that the petitioner had failed to demonstrate that V had acted
deficiently in failing to procure the appearance and testimony of two
witnesses at his first habeas trial—D, who the petitioner claimed had
perjured her testimony at his criminal trial, and S, whose testimony
both allegedly supported the petitioner's claim that his trial counsel was
ineffective and who could have impeached the testimony of eyewitnesses
to the shooting at his criminal trial. Thereafter, the habeas court denied
the petition for certification to appeal, and the petitioner appealed to
this court. *Held* that the habeas court did not abuse its discretion in
denying the petition for certification to appeal, the petitioner having
failed to demonstrate that the issues raised in his petition were debatable
among jurists of reason, that a court could have resolved the issues
in a different manner or that the questions were adequate to deserve
encouragement to proceed further: the petitioner failed to demonstrate
that V's decision not to call D as a witness at his first habeas trial was
not reasonably competent or outside of the wide range of competence
displayed by attorneys with ordinary training and skills, as V completed
a reasonable investigation by reviewing D's testimony at the petitioner's
criminal trial, sending his investigator to D's house and serving her with
a subpoena, and V provided an adequate explanation for his decision
not to call D as a witness, as D had testified against the petitioner at
his criminal trial, V believed D's testimony at the criminal trial to be
credible, D stated unambiguously that she would not testify at the habeas
trial, and V had no idea of what D might say if he compelled her testimony
because she had refused to speak to his investigator for longer than ten
minutes; moreover, the petitioner failed to present affirmative evidence
that D's testimony would have been helpful to his case, as D invoked
her fifth amendment privilege and refused to testify at his second habeas
trial; furthermore, the petitioner failed to establish that, had V called S
as a witness at the first habeas trial, there was a reasonable probability
that the outcome would have been different, as S was not present when
the shooting took place and did not witness any of the events leading
up to the shooting or the shooting itself, and S's testimony at the second
habeas trial that he did not witness the petitioner and the victim arguing
on the day of the shooting and that the petitioner and the victim were
friendly would have had an isolated, trivial effect on the inferences that
could be drawn from the evidence, as there was ample evidence in the
record supporting the verdict in the petitioner's criminal trial, including
the testimony of two witnesses that they saw the petitioner shoot the
victim, which was corroborated by a third witness' testimony that D
exclaimed immediately after the shooting that the petitioner shot the
victim, the petitioner fled the scene of the shooting and thereafter evaded
the police for approximately one month, and evidence that, while in
prison, the petitioner wrote letters to a witness attempting to persuade
her not to testify at his probable cause hearing, to lie to the police and
to encourage others to lie to the police.

Argued September 7—officially released December 7, 2021

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Newson, J.*; judgment

denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Naomi T. Fetterman*, assigned counsel, for the appellant (petitioner).

*Melissa E. Patterson*, senior assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Kelly A. Masi*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

SULLIVAN, J. The petitioner, Solomon White, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his second petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal and (2) improperly denied his petition for a writ of habeas corpus, in which he claimed that his first habeas counsel rendered ineffective assistance. Because the petitioner has not demonstrated that the habeas court abused its discretion in denying the petition for certification, we dismiss the appeal.

The petitioner was charged with murder in violation of General Statutes § 53a-54a, criminal use of a firearm in violation of General Statutes § 53a-216 (a), tampering with a witness in violation of General Statutes § 53a-151 (a), conspiracy to commit tampering with a witness in violation of General Statutes §§ 53a-48 and 53a-151 (a), bribery of a witness in violation of General Statutes § 53a-149 (a), and conspiracy to commit bribery of a witness in violation of §§ 53a-48 and 53a-149 (a).

The following facts were set forth by this court in the petitioner's direct appeal from his conviction. "On Saturday, August 27, 2005, a local church sponsored a 'Stop the Violence' block party on Vine Street in Hartford. Both the [petitioner] and Keith Carter, the victim, attended the block party, where they argued. After the block party, several people went to an apartment building located at 46-48 Vine Street. The [petitioner] lived in an apartment on the first floor of 46-48 Vine Street with his girlfriend, Latasha Drummond.

"Shortly after 9:15 p.m. that evening, several people were gathered in the common hallway on the first floor of 46-48 Vine Street. Drummond was in the apartment she shared with the [petitioner]. Drummond heard someone tell the victim to 'get out of [the petitioner's] face.' A neighbor, Dela Tindal, was in her apartment located across the hall from the apartment shared by the [petitioner] and Drummond. Tindal heard the [petitioner] and the victim arguing in the hallway. Tindal then heard the [petitioner] say, 'are you still talkin' shit? Don't make me go get my pistol,' and then Tindal heard the [petitioner's] apartment door open and close. Shortly thereafter, Tindal heard the [petitioner] say: 'You still talking shit.' Tindal then looked out of her apartment and saw the two men arguing, standing face-to-face. Tindal then saw the [petitioner] extend his hand and shoot the victim. Tindal could see sparks coming from the barrel of the gun, and the sound was 'like a . . . loud firecracker.' Upon hearing the gunshot, Drummond looked out into the hallway where she saw the victim fall to the floor and the [petitioner] with a gun in his hand. The [petitioner] then ran out of the

building. Drummond went back inside her apartment to get her keys and then ran out of the building.

"Outside of the building, Drummond encountered her neighbor, Courtney Croome. Drummond was crying and shaking and told Croome, 'He killed him. He killed him.'

"Following the incident, Drummond visited the [petitioner] at an abandoned apartment where he was hiding from the police. Drummond saw the [petitioner] wrap the gun he had used to shoot the victim in a diaper and throw it in the trash, claiming that the police could not charge him if they did not have the murder weapon. Drummond described the weapon as a 'black, old, rusty gun.'

"The [petitioner] was located and arrested approximately one month following the incident. While in prison, the [petitioner] wrote three letters to Tindal, asking that she not appear at his probable cause hearing, that she lie to the police and that she ask others to lie for him." (Footnote omitted.) *State* v. *White*, 127 Conn. App. 846, 847–49, 17 A.3d 72, cert. denied, 302 Conn. 911, 27 A.3d 371 (2011).

Attorney William O'Connor of the Office of the Public Defender represented the petitioner during the criminal trial. Following a jury trial, the petitioner was convicted of all charges and sentenced to a total effective term of sixty years of imprisonment. This court affirmed the judgment of conviction on appeal. Id., 858.

The petitioner then filed his first petition for a writ of habeas corpus seeking to collaterally attack his conviction. In his first habeas petition, the petitioner alleged that O'Connor provided ineffective assistance during the petitioner's criminal trial. The petitioner was represented by Attorney Joseph Visone, assigned counsel by the Office of the Public Defender, throughout the proceedings associated with the first habeas petition. The first habeas petition was denied following a trial on the merits, and this court dismissed the petitioner's appeal therefrom. *White* v. *Commissioner of Correction*, 168 Conn. App. 903, 149 A.3d 503 (2016), cert. denied, 325 Conn. 924, 160 A.3d 1067 (2017).

On July 12, 2018, the petitioner filed his second petition for a writ of habeas corpus, which is the subject of this appeal. In his amended petition for a writ of habeas corpus, the petitioner claimed that his first habeas counsel, Visone, provided ineffective assistance.[1] Specifically, the petitioner alleged that Visone rendered ineffective assistance by failing to procure the appearance and testimony of (1) Drummond to support the petitioner's claim that her testimony at the petitioner's criminal trial was perjured and (2) David Sims, the victim's nephew, to support the petitioner's claim, raised in his first habeas petition, that his trial counsel was ineffective for failing to call Sims as a witness during the petitioner's criminal trial to prove that the

petitioner and the victim had been together and friendly with each other the entire day, including immediately before the victim was shot.

Following a trial on the merits, the habeas court concluded that the petitioner failed to prove his claims of ineffective assistance of prior habeas counsel and, accordingly, rendered judgment denying the petition for a writ of habeas corpus. Thereafter, the petitioner filed a petition for certification to appeal from the judgment denying his petition for a writ of habeas corpus, wherein he claimed that the habeas court erred in failing to find that the petitioner proved ineffective assistance by trial and habeas counsel. The habeas court denied the petition for certification to appeal. This appeal followed. Additional facts and procedural history will be set forth as necessary.

On appeal the petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal from the denial of his petition for a writ of habeas corpus. We first set forth our standard of review and the law applicable to the claims on appeal. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling . . . [and] [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for determining the propriety of the habeas court's denial

of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed." (Citation omitted; internal quotation marks omitted.) *Wright* v. *Commissioner of Correction*, 201 Conn. App. 339, 344–45, 242 A.3d 756 (2020), cert. denied, 336 Conn. 905, 242 A.3d 1009 (2021).

The petitioner's underlying claim in the present appeal is that the habeas court improperly concluded that Visone did not provide ineffective assistance. "A claim of ineffective assistance of counsel as enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], consists of two components: a performance prong and a prejudice prong." (Internal quotation marks omitted.) *Figueroa* v. *Commissioner of Correction*, 202 Conn. App. 54, 63, 244 A.3d 149, cert. denied, 336 Conn. 926, 246 A.3d 986 (2021). "To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citation omitted.) *Henderson* v. *Commissioner of Correction*, 129 Conn. App. 188, 193, 19 A.3d 705, cert. denied, 303 Conn. 901, 31 A.3d 1177 (2011).

"A petitioner's claim will succeed only if both prongs are satisfied. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unworkable. . . . A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong, whichever is easier." (Internal quotation marks omitted.) *Figueroa* v. *Commissioner of Correction*, supra, 202 Conn. App. 64.

"The use of a habeas petition to raise an ineffective assistance of habeas counsel claim, commonly referred to as a habeas on a habeas, was approved by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992)." (Internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 191 Conn. App. 238, 246, 214 A.3d 422, cert. denied, 333 Conn. 919, 217 A.3d 1 (2019). "To prevail on a claim of ineffective assistance of habeas counsel that is predicated on the ineffective assistance of trial counsel, a petitioner must demonstrate that both trial and habeas counsel were ineffective. . . . [When] applied to a claim of ineffective assistance of prior habeas counsel, the *Strickland* [v. *Washington*, supra, 466 U.S. 687] standard requires the petitioner to demonstrate that his prior habeas counsel's performance was ineffective and that this ineffectiveness prejudiced the petitioner's prior habeas

proceeding. . . . [T]he petitioner will have to prove that one or both of the prior habeas counsel, in presenting his claims, was ineffective and that effective representation by habeas counsel establishes a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . . A petitioner who claims ineffective assistance of habeas counsel on the basis of ineffective assistance of trial counsel must satisfy *Strickland* twice; that is, he must show that his appointed habeas counsel and his trial counsel were ineffective." (Citations omitted; internal quotation marks omitted.) *Britton* v. *Commissioner of Correction*, 185 Conn. App. 388, 420, 197 A.3d 895 (2018), cert. denied, 337 Conn. 901, 252 A.3d 362 (2021). "We have characterized this burden as presenting a herculean task . . . ." (Internal quotation marks omitted.) *Sanchez* v. *Commissioner of Correction*, 203 Conn. App. 752, 774, 250 A.3d 731, cert. denied, 336 Conn. 946, 251 A.3d 77 (2021).

I

The petitioner first claims that the habeas court abused its discretion in denying his petition for certification to appeal with respect to his claim that Visone provided ineffective assistance by failing, at the first habeas trial, to procure the testimony of Drummond, who, at the criminal trial, had testified that the petitioner shot the victim.[2] Specifically, he claims that the habeas court improperly concluded that he failed to prove that Visone rendered deficient performance by failing to procure the appearance of Drummond in support of the petitioner's claim that her testimony at the petitioner's criminal trial was perjured. The petitioner argues that Visone's decision not to attempt to compel Drummond's appearance as a witness was unreasonable and prejudiced him because his conviction rested, in large part, on her testimony. We disagree.

The following evidence and testimony were presented to the habeas court at the second habeas trial at which the petitioner was represented by Attorney Andrew Marcucci. When Visone was questioned at a deposition[3] as to why he did not call Drummond as a witness at the first habeas trial, Visone stated that when one of his investigators went to Drummond's house and gave her a subpoena, she threw him out and said, " 'I am not going to court.' " Visone explained that the fact that Drummond did not want to testify indicated to him that she was not going to change her story or recant her previous testimony.[4]

Visone further testified at the deposition that, even if Drummond had indicated a desire to recant, as an officer of the court, he "would have had to alert the judge to appoint counsel to her. And you know what happens after that." Visone also stated that, although credibility is a question for the finder of fact, it is also an issue attorneys must consider when making tactical

decisions as to whether to put a witness on the stand. Visone explained why he believed that Drummond's testimony at the petitioner's criminal trial was credible and why he therefore decided not to compel Drummond's testimony in an attempt to prove that her original testimony was perjured: "The reason I believed . . . Drummond was not lying is because when she ran out of the building—and this is perfect excited utterance— she said, 'He shot him, he shot him.' . . . Liars would say '[The petitioner] shot him, [the petitioner] shot him, [the petitioner] shot him,' because they're making it up. . . . [T]hat, to me, was a very powerful indicia of reliability. Because she didn't use—she had to have . . . [Croome] get it out of her, 'Who are you talking about?' . . . It was her testimony that she said, '[The petitioner] shot him.' "

At the petitioner's second habeas trial Marcucci called Drummond to testify, and Drummond was placed under oath. Immediately thereafter, the court advised Drummond of her fifth amendment right against self-incrimination and that, if she indicated that she had previously testified falsely, she could expose herself to a perjury charge. Drummond then invoked her fifth amendment right.

Marcucci next called an investigator, Julio Ortiz, to the witness stand. Ortiz had been hired by Marcucci in connection with the petitioner's second habeas petition. Ortiz testified that he was instructed to locate and interview Drummond. According to Ortiz, he located Drummond and was able to speak with her for about ten minutes.[5] Ortiz described Drummond as guarded and apprehensive and stated that she seemed unwilling to cooperate with the investigation. When Ortiz asked Drummond where she was when the shooting occurred, according to Ortiz, Drummond stated that she was outside of her apartment, in the hallway of her apartment building. Drummond also stated that she had never seen the petitioner with a gun and that she did not see a gun at the time of the shooting. Ortiz also asked Drummond if she had ever told Croome, shortly after the shooting occurred, that the petitioner shot the victim, to which Drummond responded that Croome had lied. Ortiz further testified that Drummond claimed that the petitioner never told her that he shot the victim. Ortiz stated that Drummond also said she did not want to testify in this case.

The habeas court found the following facts, on the basis of the evidence, after the conclusion of the habeas trial. "In short, evidence of the statements allegedly made by [Drummond] were too unreliable to be given much credit. When speaking to the petitioner's investigator, she is alleged to have admitted that she was not in her apartment when the shooting occurred, but outside in front of the building, that she did not see a gun in the petitioner's hand at the time of the shooting,

and denied that she made any statement about witnessing the shooting to . . . Croome. She also allegedly denied meeting the petitioner several days later where he allegedly admitted to the shooting. When speaking to the state's inspector, however, [Drummond] supposedly made contradictory statements, claiming that the petitioner's investigator 'wanted me to change my story, but I was not going to change my story.' . . . [Drummond] contradicting herself, and her general lack of credibility, is nothing new. . . . [Visone] testified that he sent his investigator out to speak with [Drummond], but she refused to speak with him and was adamant that she 'was not coming to court to testify.' Given her refusal to speak to his investigator, [Visone] presumed she was not going to be helpful to his client, and chose not to call her as a witness." (Citations omitted; footnote omitted.)

The habeas court held that Visone did not provide ineffective assistance because it was not "overtly unreasonable for . . . Visone to make the decision not to call a witness who testified against his client in the underlying trial, appeared to remain hostile to his cause, and where he had no idea what the witness might say." We agree with the habeas court's conclusion that, because Visone's failure to procure the testimony of Drummond was not unreasonable, the petitioner failed to satisfy the performance prong of the *Strickland* analysis.

To satisfy the performance prong of the *Strickland* analysis, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Strickland* v. *Washington*, supra, 466 U.S. 688. Our Supreme Court has stated that "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances, and that [j]udicial scrutiny of counsel's performance must be highly deferential." (Internal quotation marks omitted.) *Figueroa* v. *Commissioner of Correction*, supra, 202 Conn. App. 63. A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 330 Conn. 520, 538–39, 198 A.3d 52 (2019); see also *Meletrich* v. *Commissioner of Correction*, 332 Conn. 615, 632, 212 A.3d 678 (2019) (applying strong presumption that counsel's strategic decisions were reasonable).

When a petitioner alleges that counsel has provided ineffective assistance on the basis of counsel's failure to call a witness, "[d]efense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation *and without adequate explanation*, failed to call the witness at trial. The reasonableness of an investiga-

tion must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it. . . . Furthermore, [t]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Emphasis in original; internal quotation marks omitted.) *Jordan* v. *Commissioner of Correction*, 197 Conn. App. 822, 833, 234 A.3d 78 (2020), aff'd,   Conn.   ,   A.3d   (2021); see also *Meletrich* v. *Commissioner of Correction*, supra, 332 Conn. 628 ("decision whether to call a particular witness falls into the realm of trial strategy, which is typically left to the discretion of trial counsel" (internal quotation marks omitted)). Counsel does not engage in deficient performance by failing to "call witnesses to testify in instances in which jurors likely would have found the testimony unreliable, inconsistent, or unpersuasive in light of the state's evidence against the petitioner." *Jordan* v. *Commissioner of Correction*, supra, 868.

In the present case, Visone completed a reasonable investigation; see id., 833; by reviewing Drummond's testimony at the petitioner's criminal trial, sending his investigator to Drummond's house, and serving her with a subpoena. As determined by the habeas court, Visone also provided an adequate explanation for his decision not to call Drummond as a witness—Drummond had testified against the petitioner at his criminal trial, Visone believed her testimony at the petitioner's criminal trial to be credible, Drummond stated unambiguously that she would not testify at the habeas trial, and Visone had no way of knowing what Drummond might say if he was able to compel her testimony because she had refused to speak to his investigator for longer than ten minutes. See id. Furthermore, because Drummond invoked her fifth amendment privilege and refused to testify at the petitioner's second habeas trial, the petitioner has presented no affirmative evidence that Drummond's testimony would have been helpful to his case. See *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 681, 51 A.3d 948 (2012) ("[t]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense" (internal quotation marks omitted)).[6] After considering all of the circumstances, we cannot conclude that Visone's decision not to call Drummond as a witness was unreasonable, as the decision concerned a matter "of trial strategy, which is typically left to the discretion of trial counsel . . . ." (Internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, supra, 332 Conn. 628.

Accordingly, because the petitioner failed to establish that Visone's decision not to call Drummond as a witness at the petitioner's first habeas trial was not reasonably competent or outside the wide range of compe-

tence displayed by lawyers with ordinary training and skills;[7] see *Johnson* v. *Commissioner of Correction*, supra, 330 Conn. 539; the petitioner has failed to demonstrate that the habeas court abused its discretion by denying his petition for certification to appeal with respect to this claim.

II

The petitioner also claims that the habeas court abused its discretion in denying his petition for certification to appeal with respect to his claim that Visone rendered ineffective assistance by failing to procure the testimony of Sims at the habeas trial in support of the petitioner's claim that his trial counsel, O'Connor, was ineffective for failing to call Sims as a witness at his criminal trial. The petitioner claims that Visone's decision not to call Sims as a witness was unreasonable and prejudiced him because, according to the petitioner, Sims' testimony would have "contradicted and/or impeached the testimony of both . . . [Tindal and Drummond] and would have called into question any motive on the petitioner's part to cause the death of the [victim]." We disagree.

The following evidence and testimony were presented to the habeas court at the habeas trial. According to Sims' testimony at the second habeas trial, he was never subpoenaed and did not testify at the petitioner's underlying criminal trial, nor did he testify at the petitioner's first habeas trial. According to Visone's deposition, the petitioner told him that Sims would testify that Sims went to the Vine Street apartments around 10 a.m. on the morning of the shooting to visit his uncle, the victim, and that Sims did not witness any fighting or arguing between the petitioner and the victim.

Visone testified that his investigator went to Sims' house a total of seven times and spoke with him on the phone. Additionally, according to Visone, Sims' stepfather was given a subpoena at Sims' residence after he told the investigator: " 'Don't come here anymore because [Sims] doesn't want to talk to you.' " When Visone spoke with Sims on the phone, Sims said there was " 'nothing [he] could say at this trial that would be of any benefit to [the petitioner].' "

Visone subpoenaed and disclosed Sims as a witness at the petitioner's first habeas trial. However, Sims never appeared to testify. Visone testified: "I went to go look for him in the hallway because I told him it's a subpoena. It's a court order. 'You have to show up.' . . . But I knew that if he showed up, and I talked to him again, and he said the same thing to me in the courthouse that he said to me on the phone, I'd have been a fool to put him on the witness stand."

Visone testified at his deposition that he did not consider requesting a continuance because "that would have been unethical. I knew what he was going to say.

He was going to say that '[t]here's nothing I can say that's going to help the [petitioner],' and I would have to disclose that to the judge before the judge would take the extraordinary step of issuing an arrest or a capias on a witness." Visone was asked whether he believed that the petitioner "had a strong habeas case without [Sims'] testimony," to which Visone replied, "He had no case." When asked to clarify this statement on cross-examination, Visone stated: "[Sims], if he had testified, according to [the petitioner] what he would have testified to is that they met in the morning. It was somebody's birthday, and they were going to have a drink together. There was a block party, so there was a lot of drinking going on. And I believe I said to [the petitioner], 'Well, just because—you know, even if he said you weren't fighting in the morning, that's ten o'clock in the morning, the [victim] was shot at ten o'clock at night. People, after a lot of drinking, just because you're not arguing with somebody in the morning doesn't preclude you from arguing with them at night.' So, you know, in the scheme of things, it's you know . . . there's nothing there. . . . I mean, basically, it was two women who testified they were eyewitnesses to the shooting. They were both extensively cross-examined and impeached at trial by . . . O'Connor. I believe . . . Tindal was in the witness protection program for the state's attorney's office. She was impeached on that. So they were both thoroughly impeached. The fact that—again, very important, is that the jury knew that it took the police a month to find [the petitioner], because against his attorney's advice, he took the witness stand and testified in the criminal trial. So the jury knew that he was gone for a month. Okay? And when you're gone for a month, and they can't find you, when they knew where he was living . . . which was Vine Street. That's where the murder happened. So they knew from day one he was on Vine Street, and then it takes a month to find him? That's because he's hiding."

Sims, however, did testify at the second habeas trial. According to Sims' testimony, in 2005, Sims was close with both the petitioner and the victim, who was his uncle. Sims also testified that he and the petitioner had been friends since childhood. On the day of the shooting, Sims testified that he, the petitioner, and the victim were together "[j]ust hanging out" and "were walking around [the] neighborhood." According to Sims, the three men met up at some point around 4 p.m. at the Vine Street apartment complex to celebrate Sims' birthday. Sims testified that he, the petitioner, and the victim were having drinks outside of the apartment complex for the majority of the evening, with the exception of a few trips to the package store. Sims stated that the petitioner and the victim were friendly toward each other and that he did not witness the two arguing or acting in a hostile manner toward each other while

he was with them. Sims testified that he left the Vine Street apartments at around 7 or 8 p.m. Then, about three minutes after leaving the apartments, Sims received a call from his aunt, who told him that his uncle, the victim, had been shot. Sims testified that "[i]t was ridiculous. I'm around the corner. Seriously, around the corner."

The habeas court found the following facts, on the basis of the evidence, after the conclusion of the habeas trial. "Although [Sims] did testify before this court, it is not actually clear what significance the petitioner claims his testimony would have had to the outcome of the original trial. While he was with the petitioner most of the day on the day the incident occurred, he and the petitioner separated prior to the shooting, and he did not witness any of the incidents directly related to the dispute the two men had in the hallway or the shooting. At best, his testimony, general background information that he had 'never seen the petitioner and [the] victim exchange harsh words,' and that the petitioner generally had a 'good demeanor,' could have been considered as character evidence, but was hardly significant enough that there is any real probability that including it would have resulted in a more favorable outcome for the petitioner."

Accordingly, the habeas court concluded that Visone's failure to call Sims as a witness did not prejudice the petitioner because Sims did not witness any of the incidents directly related to the shooting. We agree with the habeas court's conclusion that the petitioner failed to establish that he was prejudiced by Visone's failure to procure the testimony of Sims at the first habeas trial.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . To satisfy the second prong of *Strickland*, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different. . . . In making this determination, a court hearing an ineffectiveness claim . . . must consider the totality of the evidence before the judge or the jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." (Internal quotation

marks omitted.) *Figueroa* v. *Commissioner of Correction*, supra, 202 Conn. App. 63–64.

Here, the petitioner has not established that, had Visone called Sims as a witness at the first habeas trial, there is a reasonable probability that the outcome of his first habeas trial would have been different. As the habeas court noted in its memorandum of decision, Sims was not present at the Vine Street apartments when the shooting took place. Although he allegedly had been with the petitioner and the victim for the majority of the day on which the incident occurred, he left the scene of the crime prior to its occurrence. Sims testified that he did not witness any of the events in the hallway leading up to the shooting or the shooting itself. Sims' testimony that he did not witness the petitioner and the victim arguing on the day of the shooting and his testimony that the petitioner and the victim were friendly does not create "a probability sufficient to undermine confidence in the verdict"; id., 63; considering the "totality of the evidence" that was before the jury. Id., 64.

In the petitioner's criminal trial, the verdict was supported by ample evidence in the record, including testimony—which the jury could have found credible—from Drummond and Tindal, who both claimed to have seen the petitioner shoot the victim. Drummond's testimony was corroborated by Croome's testimony that Drummond exclaimed immediately after the victim was shot that the petitioner did it. The jury also could have inferred the petitioner's guilt from his flight from the scene after the shooting and his subsequent evasion of the police for approximately one month. See *State* v. *White*, supra, 127 Conn. App. 854–55. Furthermore, there was evidence that, while in prison, the petitioner wrote three letters to Tindal attempting to persuade her (1) not to testify at the petitioner's probable cause hearing, (2) to lie to the police, and (3) to encourage others to lie to the police. Given the totality of the evidence in the record, the testimony of Sims, at most, would have had an "isolated, trivial effect" on the inferences that could be drawn from the evidence. *Figueroa* v. *Commissioner of Correction*, supra, 202 Conn. App. 64. We therefore agree with the habeas court's conclusion that Visone's decision not to call Sims as a witness at the first habeas trial did not prejudice the petitioner's defense. We, thus, conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal as to the petitioner's claim concerning Visone's failure to call Sims as a witness.

Accordingly, we conclude that, with respect to both claims of ineffective assistance of prior habeas counsel raised on appeal, the petitioner has failed to show that the issues involved are debatable among jurists of reason, that a court could have resolved the issues in a different manner, or that the questions raised were ade-

quate to deserve encouragement to proceed further.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner also claimed in his amended habeas petition that the state violated his due process rights during his criminal trial by using perjured testimony from Drummond and Tindal. The petitioner has not raised this claim on appeal.

[2] Although Drummond testified at the petitioner's criminal trial, she did not testify at the petitioner's first habeas trial. Visone subpoenaed Drummond and disclosed her as a witness but never called her to testify and did not seek a capias to compel her appearance.

[3] At the time of the habeas trial, Visone resided outside of Connecticut and did not actually testify at the habeas trial. The parties, however, stipulated to taking his deposition and allowing the transcript to be admitted as a full exhibit.

[4] At the petitioner's criminal trial, Drummond testified that, on the night of the shooting, she was in her apartment when she heard a noise in the hallway, which sounded like a firecracker. When she opened her apartment door, she saw the petitioner standing with a gun in his hand and the victim falling to the ground. Drummond testified that she ran outside and told Croome, "He killed him. He killed him."

[5] After a hearsay objection from the respondent, the Commissioner of Correction, the court determined that Drummond was "unavailable" and allowed the petitioner to present statements allegedly made by her against her penal interest when interviewed by Ortiz. See Conn. Code Evid. § 8-6 (4); see also *State* v. *Frye*, 182 Conn. 476, 481, 438 A.2d 735 (1980) (witness asserting testimonial privilege is "unavailable" within meaning of rules of evidence).

[6] The petitioner argues that the habeas court should have drawn an inference from Drummond's invocation of her fifth amendment right that she did so because she did not want to admit that she perjured herself at the petitioner's criminal trial. Although the habeas court was permitted to draw such an inference, it was not required to do so. *In re Samantha C.*, 268 Conn. 614, 665, 847 A.2d 883 (2004) (explaining that adverse inferences are ordinarily permissible in noncriminal proceedings).

[7] In light of our determination that the habeas court properly determined that the petitioner failed to establish that Visone's performance was deficient, we need not address the prejudice prong of the *Strickland* test. See *Fair* v. *Commissioner of Correction*, 205 Conn. App. 282, 294, 256 A.3d 163 ("[i]n its analysis, a reviewing court may look to the performance prong or to the prejudice prong [of the *Strickland* test], and the petitioner's failure to prove either is fatal to a habeas petition" (internal quotation marks omitted)), cert. denied, 338 Conn. 910, 258 A.3d 1280 (2021).